## Shohola Feed & Grain Co. v. Hayden

*Sidney L. Krawitz* and *Roger A. Woltjen*, for plaintiff.

*Karl A. Wagner* and *I. Reines Skier*, for defendant.

DAVIS, P. J., December 23, 1955.—Plaintiff brought this action in assumpsit for chicken feed sold and delivered to defendant. Defendant maintains the feed was of inferior quality and contained a highly toxic chemical and harmful drug and also that some of the feed was wet and moldy and unfit for consumption, that as a result of the use of this feed he suffered a loss of chickens and, therefore, filed his counterclaims for damage. Plaintiff seeks, under Pa. R. C. P. 4005, to require defendant to answer 12 interrogatories. Defendant objects to interrogatories nos. 2, 3, 4, 5, 7, 11 and 12 and bases his objection on the ground that they are in violation of Pa. R. C. P. 4011 in that the interrogatories and answers thereto: (a) Are sought in bad faith; (b) cause unreasonable annoyance and expense; (c) relate to matters which are privileged or would cause the disclosure of development or research; (d) would disclose information or other things made or secured in anticipation of litigation or in preparation for trial. We do not find that the interrogatories offend in relation to reasons (a), (b) and (c). The last reason presents a more serious problem.

In approaching this problem it must be borne in mind that defendant in his counterclaims had alleged

that the feed contained a highly toxic chemical and harmful drug without identifying the chemical or drug by name or quantity and the alleged damages are not set forth in detail. In one way or another plaintiff is entitled to obtain this information before going to trial in order that he may prepare his defense to the counterclaim.

The interrogatories to which objections have been filed will be considered seriatim.

"2. Were ante mortems or post mortems performed on any of the chickens? If so, give the name or names and address or addresses and profession of the person or persons performing said examinations, the dates of examinations and the number of chickens examined pathologically on each date."

If ante mortem or post mortem examinations were performed, it is difficult to determine whether this was done in the usual course of business or in contemplation of litigation. If the examination were made in the usual course of business the interrogatory should be answered. If they were made in contemplation of litigation it need not be answered. If no examination were made we do not believe the failure to act could be said to be in contemplation of litigation and in this respect the interrogatory should be answered. Identity and whereabouts of witnesses are expressly exempted from the limitation of rule 4011(d). Therefore, the name and address of any witness who would testify in relation to the subject matter contained in the interrogatory should be disclosed. We appreciate that the interrogatory does not expressly request the name or whereabouts of witnesses nor does it restrict the request for information to witnesses only, but the general import of the interrogatory, in our opinion, implies a request for the names of witnesses. In order to bring the matter to issue more promptly we so hold. We allow the second interrogatory with the limitation

that defendant is not required to disclose any information secured for the first time in anticipation of this litigation, other than the names and addresses of witnesses: Bradley v. Philadelphia Transportation Company, 87 D. & C. 548.

"3. Was any deleterious substance found in any chicken upon which examinations were made, and if so, specifically what was the nature, kind and amount found in any particular chicken or chickens."

If defendant did not make the examination, he is not competent to state the results of the examination and will not be required so to do. If defendant made the examination and not in anticipation of this litigation then the interrogatory should be answered.

"4. Were any analyses made of the feed sold by the Plaintiff to the Defendant which feed allegedly injured, killed and stunted the growth of the Defendant's chickens? If so, give the name or names, address or addresses, and profession of the person or persons making such analyses and the dates upon which said analyses were made. How many chickens were, if any, examined on each analyses date?"

Interrogatory no. 4 asks questions similar to interrogatory no. 2. For the reasons stated in reference thereto we dispose of it in the same manner.

"5. If analyses were made, what did these analyses disclose with relation to the nature, kind and amount and the percentage per pound of any alleged deleterious substance or substances contained in said feed?"

Interrogatory no. 5 asks questions similar to interrogatory no. 3. For the reasons stated in reference thereto, we dispose of it in the same manner.

"7. Were any of the chickens referred to in Paragraphs seventeenth, twenty-third, twenty-fourth of Defendant's Answer, Counterclaim and Set Offs sold? If so, on what date or dates were the chickens sold? What were the buyer's name or names and address or

addresses? What price did the buyer or buyers pay per pound and how many pounds were sold to the respective buyer or buyers. What were the number of chickens equivalent to the number of pounds sold?"

Interrogatory no. 7 requests information relating to the usual conduct of defendant's business. Sale of chickens is one of the important elements of the chicken business, and not an act done in anticipation of this litigation. The information requested would bear on the question of damages, the elements of which were not detailed in the counterclaim. The interrogatory is allowed.

"11. What preventive measures did you take to prevent loss of your chickens? On what dates?"

Interrogatory no. 11 is so general it might conceivably require a detailed description of the daily care of chickens during not only the life of the chickens involved but prior thereto, anent type and construction of chicken house. Much of this information would be irrelevant. The objection to this interrogatory is sustained.

"12. Did you consult a veterinarian with reference to the loss of your chickens? If so, on what dates? What was the name or names, address or addresses of the veterinarian or veterinarians? Did the veterinarian or veterinarians prescribe any medicines? If so, what was the nature of the medicines prescribed and on what dates?"

Interrogatory no. 12 asks questions similar to interrogatory no. 2. For the reasons stated in reference thereto we dispose of it in the same way.

Discovery as limited under the Pennsylvania Rules of Civil Procedure was designed to facilitate the trial of actions at law. We feel that a liberal construction of these rules will best serve this purpose: Drawbaugh, Administratrix, v. Pennsylvania Power & Light Company, 84 D. & C. 209.

And now, December 23, 1955, it is ordered and decreed that defendant, Charles Hayden, file a verified answer to interrogatories nos. 2, 3, 4, 5, 7 and 12 as limited in the opinion filed herewith, within 20 days after service of copy of this order upon him or his counsel of record.